IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DORN McSWAIN, | ) | Case No. 1:18cv2361 |
| | ) | |
| Petitioner, | ) | JUDGE PAMELA A. BARKER |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| TIM BUCHANAN, Warden, | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |
| | ) | |

## I.      Introduction

Dorn McSwain, an Ohio prison inmate serving a ten-year aggregate sentence for rape, kidnapping and gross sexual imposition, has filed a petition for writ of habeas corpus under 28 U.S.C. § 2254, contending that the state courts violated his constitutional rights in several ways at the trial and appellate court levels in *State v. McSwain*.  ECF Doc. 1.  Respondent, Tim Buchanan, warden of the Noble Correctional Institution in Caldwell, Ohio has opposed the petition in his answer and return of writ.  ECF Doc. 7.  Walker has filed a traverse in support. ECF Doc. 9.  The matter is before me by an automatic order of reference under Local Rule 72.2 for preparation of a report & recommendation pursuant to Local Rule 72.1.

Because McSwain's petition was not "verified" as required by 28 U.S.C. § 2242 or "signed under penalty of perjury" as required by Rule 2(c)(5) of the Rules Governing Section 2254 Cases in the United States District Courts, I recommend that the Court order McSwain to SHOW CAUSE why his petition should not be DISMISSED for failure to comply with these

requirements.  In the alternative, should the Court decide to overlook the lack of verification, because McSwain's claims lack merit, have been procedurally defaulted and/or assert only noncognizable state law issues, I recommend that the court DISMISS the claims and DENY McSwain's petition for writ of habeas corpus.

## II.     State Court Case History

### A.     Trial Court and Direct Appeal Proceedings

On September 8, 2016 a Cuyahoga County, Ohio grand jury returned an indictment charging McSwain with six counts.  Counts One, Two, Three and Four charged McSwain with the Rape (F1) of T.M.[1], in violation of Ohio Rev. Code §2907.02(A)(2).  Count Five charged McSwain with Gross Sexual Imposition (F4) against T.M., in violation of Ohio Rev. Code § 2907.05(A)(1); and Count Six charged McSwain with Kidnapping (F1) of T.M., in violation of Ohio Rev. Code § 2905.01(A)(4).  The grand jury attached a sexual motivation specification to Count Six under Ohio Rev. Code § 2941.147(A).  The victim alleged in the indictment was Jane Doe, and the offense date alleged in each count was July 3, 2001.  ECF Doc. 7-1 at 4.  McSwain pleaded not guilty on September 22, 2016.  ECF Doc. 7-1 at 7.

The matter proceeded to trial on December 12, 2016; on the first day of trial, McSwain waived his right to trial by jury.  ECF Doc. 7-1 at 8.  On December 15, 2016, the trial court found McSwain not guilty of one rape count but guilty of the remaining counts and the specification.  ECF Doc. 7-1 at 10.  On January 19, 2017, the trial court sentenced McSwain to serve a ten-year prison term on each rape count, a ten-year term on the kidnapping count, and an eighteen-month term on the gross sexual imposition count.  All the prison terms were ordered to

---

[1] The state prosecutor sought and was granted permission to amend the indictment to substitute the name of the victim for the pseudonym Jane Doe alleged in the indictment.  ECF Doc. 7-2 at 8.  Consistent with the handling of the victim's name in the parties' filings and in the state court proceedings, I will refer to the victim by her initials, T.M.

be served concurrently for an aggregate sentence of ten years.  McSwain was notified he would

be required to serve a mandatory period of five years of post-release, that he was classified as a

sexually oriented offender, and that would be required to register as a Tier III sex offender.  ECF

Doc. 7-1 at 11.

McSwain, represented by new counsel, electronically filed a notice of appeal in the Ohio

Court of Appeals on February 10, 2017.  ECF Doc. 7-1 at 14.  McSwain's merit brief, filed on

April 22, 2017, raised five assignments of error:

> FIRST ASSIGNMENT OF ERROR
> The trial court erred by failing to grant a judgment of acquittal, pursuant to Crim.
> R. 29(a), on the charges, and thereafter entering a judgment of conviction of those
> offenses as those charges were not supported by sufficient evidence, in violation
> of defendant's right to due process of law, as guaranteed by the Fourteenth
> Amendment to the United State Constitution.
>
> SECOND ASSIGNMENT OF ERROR
> Appellant's convictions are against the manifest weight of the evidence.
>
> THIRD ASSIGNMENT OF ERROR
> Appellant was denied his right to a fair trial when the trial court allowed expert
> testimony from a witness who was not deemed to be an expert.
>
> FOURTH ASSIGNMENT OF ERROR
> The trial court committed plain error by ordering convictions for separate counts
> because the trial court failed to make a proper determination as to whether those
> offenses are allied offenses pursuant to R.C. 2941.25 and they are part of the same
> transaction under R.C. 2929.14.
>
> FIFTH ASSIGNMENT OF ERROR
> The trial court erred by ordering Appellant to pay costs in the journal entry when
> it had previously suspended court costs on the record.

ECF Doc. 7-1 at 24.  The State of Ohio filed an opposition brief on June 5, 2017.  ECF Doc. 7-1

at 47.  The Ohio Court of Appeals affirmed McSwain's convictions and sentences in a judgment

entry and opinion filed on November 9, 2017 but remanded the case to permit the trial court to

correct a court cost issue that is not relevant to McSwain's federal habeas claims.  ECF Doc. 7-1

at 64.  *See State v. McSwain*, 8th Dist. Cuyahoga No. 104451, 2017-Ohio-8489, 2017 Ohio App.

LEXIS 4911 (November 9, 2017).

On December 21, 2017, McSwain filed a *pro se* notice of appeal in the Ohio Supreme

Court.  ECF Doc. 7-1 at 87.  McSwain's memorandum in support of jurisdiction raised three

propositions of law:

> I. The trial court erred by failing to grant a judgment of acquittal, pursuant to Crim. R. 29(A), the charges were not supported by sufficient evidence in violation of the Appellant's due process right as guaranteed by the Fourteenth Amendment of the United States Constitution.
>
> II. The Appellant was denied his right to a fair trial, when the trial court allowed expert testimony from a witness who was not deem[ed] to be an expert.
>
> III. The trial court committed plain error by ordering convictions for separate counts because the trial court failed to make a proper determination as to whether those offenses are allied offenses pursuant to R.C. 2941.25 and they are part of the same transaction under R.C. 2929.14.

ECF Doc. 7-1 at 90.  The state waived the right to file a response memorandum.  ECF Doc. 7-1

at 120.  The Supreme Court of Ohio declined to accept jurisdiction of the appeal in an entry filed

on April 25, 2018.  ECF Doc. 7-1 at 121, *see also State v. McSwain*, 152 Ohio St.3d 1446, 2018-

Ohio-1600, 96 N.E.3d 300.

**B.     Application to Reopen Direct Appeal**

While his request for Ohio Supreme Court review was being considered, McSwain

commenced proceedings in the Ohio Court of Appeals to reopen his direct appeal.  First, on

January 30, 2018, McSwain filed a *pro se* motion in the Ohio Court of Appeals requesting that

he be furnished a copy of his trial transcript so that he could file an application to reopen under

Ohio App. R. 26(B).  ECF Doc. 7-1 at 122.  On February 1, 2018 the court of appeals denied the

motion but indicated McSwain could request a transcript once he filed his Rule 26(B)

application.  ECF Doc. 7-1 at 125.

4

McSwain filed his *pro se* Rule 26(B) motion on February 16, 2018.  ECF Doc. 7-1 at 126.  McSwain's motion asserted that his appellate counsel was ineffective because he never asserted an assignment of error arguing *trial* counsel's ineffectiveness for failing to assert that the preindictment delay in prosecuting the case prejudiced McSwain's ability to defend himself (asserting several alleged types of prejudice); and he asserted that *appellate* counsel was ineffective for not asserting an assignment of error based on the state's alleged loss of exculpatory evidence and for its failure to turn over hospital records of the victim.  The state filed an opposition brief in which it asserted that McSwain's application to reopen was untimely under Ohio App. R. 26(B)(1).  And the state contended that McSwain's arguments would have failed on the merits had they been raised by appellate counsel.  ECF Doc. 7-1 at 135.  On May 7, 2018 the Ohio Court of Appeals denied McSwain's application to reopen because he filed it after the deadline set in Ohio App. R. 26(B)(1) and failed to show good cause for the late filing.  ECF Doc. 7-1 at 142; *see State v. McSwain*, Eight Dist. Cuyahoga No. 105451, 2018-Ohio-1827; 2018 Ohio App. LEXIS 1959.  McSwain did not commence a timely appeal of that decision to the Supreme Court of Ohio.[2]

Despite being specifically advised he could do so, nothing in the record indicates McSwain requested a copy of his trial transcript from the court of appeals after he filed his Rule 26(B) application.

---

[2] McSwain did make, *pro se*, an unsuccessful attempt to initiate an appeal to the Ohio Supreme Court of the decision declining his application to reopen his direct appeal.  ECF Doc. 1-3 at 1.

### III.    Federal Habeas Corpus Petition

On October 1, 2018, McSwain, placed his *pro se*[3] petition for writ of habeas corpus

pursuant to 28 U.S.C. § 2254 in the prison mailing system.[4]  ECF Doc. 1.  McSwain did not

verify or sign his petition under penalty of perjury.  And McSwain's petition did not

"substantially follow . . . the form appended to" the Rules Governing Section 2254 Cases in the

United States District Courts (hereinafter "Habeas Rules").

McSwain's petition raises three claims for relief.  Because McSwain did not use the

standard habeas corpus petition form, his petition mixes supporting fact statements with his

arguments.  I will paraphrase the factual statements offered in support of his three grounds for

relief:

> **GROUND ONE:** THE CHARGES WERE NOT SUPPORTED BY
> SUFFICIENT EVIDENCE IN VIOLATION OF THE PETITIONER'S DUE
> PROCESS RIGHT AS GUARANTEED BY THE FOURTEENTH
> AMENDMENT OF THE UNITED STATES CONSTITUTION. ECF Doc. 1 at 5.

PARAPHRASE OF GROUND ONE SUPPORTING FACTS: McSwain challenges the

sufficiency of the trial evidence to support his convictions.  McSwain essentially offers his

version of what happened before and during the incident that is different from the state's version.

He asserts that he saw the victim, T.M., leaving a bar on Fleet Avenue with her friend.  As T.M.

approached her car, McSwain propositioned her, offering to smoke crack cocaine with her in

exchange for sex.  He asserts T.M. agreed to the proposition and the two engaged in consensual

sex.  McSwain challenges as implausible the reasoning underpinning T.M.'s version of events.

McSwain then asserts T.M. concocted the story of the rape in order to avoid the anger of her

---

[3] Warden Buchanan asserted incorrectly that McSwain was represented by counsel in filing his federal habeas corpus petition.  ECF Doc. 7 at 10.
[4] The filing date is determined by applying the prison mailbox rule.  *Houston v. Lack*, 487 U.S. 266, 270 (1988).

boyfriend. McSwain theorizes T.M.'s boyfriend was angry because she arrived late to his apartment after her encounter with McSwain. In addition to offering an alternate version of events, McSwain's petition also challenges the basis for T.M.'s in-court identification of McSwain as her assailant. ECF Doc. 1 at 6-8.

> **GROUND TWO:** THE PETITIONER WAS DENIED HIS RIGHT TO A FAIR TRIAL WHEN THE TRIAL COURT ALLOWED EXPERT TESTIMONY FROM A WITNESS THAT WAS DEEMED NOT TO BE AN EXPERT. ECF Doc. 1 at 7.

PARAPHRASE OF GROUND TWO SUPPORTING FACTS: McSwain alleges he was denied a fair trial when the court allowed expert testimony from Ohio BCI DNA analyst Samuel Troyer, someone McSwain contends was never stated to be an expert on the record. He also implies that to the extent his trial counsel stipulated to the qualifications of the expert, McSwain would have had a right to challenge the effectiveness of his trial counsel on direct appeal. ECF Doc. 1 at 7-8.

> **GROUND THREE:** DUE PROCESS AND EQUAL PROTECTION VIOLATIONS. ECF Doc. 1 at 8.

PARAPHRASE OF GROUND THREE SUPPORTING FACTS: McSwain asserts due process and equal protection violations occurred when he was denied a trial transcript prior to his attempt to reopen his direct appeal under Ohio App. R. 26(B). And he contends the harm from this violation was compounded because he was not able to successfully initiate an appeal of the denial of his Rule 26(B) application to the Ohio Supreme Court. ECF Doc. 1 at 8-9.

Warden Buchanan filed an answer and return of writ. ECF Doc. 7. In it, the warden opens with the general argument that McSwain's petition should be dismissed because it was not verified as required by 28 U.S.C. § 2242 and Rules Governing Sections 2254 Proceedings in District Court.

Warden Buchanan argues that McSwain's Ground One claim – which contends there was insufficient evidence to convict him – fails on the merits.  ECF Doc. 7 at 17-21.

The warden argues that the Ground Two claim raises only a noncognizable issue of state law that may not be the subject of federal habeas relief.  The warden further argues that even if the Ground Two claim had some implied issue of federal law, it was never presented to the state courts as a federal issue; as a result, the claim was procedurally defaulted.  And, the warden contends, if McSwain argues that his appellate counsel was ineffective for not characterizing the Ground Two claim as a federal claim, *that* claim was procedurally defaulted because it was not presented through one full round of review in the Ohio courts.  The warden finally contends that if the Ground Two claim were decided on the merits, it would fail for lack of merit.  ECF Doc. 7 at 21-25.

Warden Buchanan argues that McSwain's Ground Three claim raises only a noncognizable issue of state procedural law and no federal-law issue.  Even if the issue of cognizability was overlooked, the warden points out that the Ground Three claim was procedurally defaulted because it was never considered in the Ohio courts: it was not a part of the direct appeal, and McSwain was denied leave to reopen his direct appeal in order to raise the issue then.  ECF Doc. 7 at 25-27.

McSwain filed a traverse in which he reiterated his concerns that the legal proceedings in his case were "flawed from the beginning."  McSwain asserts generally that the case has been "layered with incompetence and gross constitutional violations from the state."  And he contends his lawyer "was conflicted with divided loyalty and was completely ineffective."  ECF Doc. 9 at 2.  But the main thrust of the traverse is McSwain's challenge to the DNA evidence submitted at trial: he contends there were chain of custody problems and discrepancies about what samples

8

were tested and by whom.  McSwain contends his traverse arguments concerning the DNA

evidence are "new reliable evidence" because he learned of them from his review of the trial

transcript (which he finally obtained when the warden filed the state court record in this court).

McSwain asserts that the transcript was withheld from him when "the state actors and courts

came to the same conclusion independently [that the DNA evidence was hopelessly flawed and]

made a conscious decision to limit the transcript of the truth, to only loyal conspirators that

would hold the line."  In other words, McSwain believes the court and prosecutor, knowing how

weak the DNA evidence was, conspired to keep him from learning about the issue by arranging

that he not receive a copy of his trial transcripts, which affected his ability to fully pursue his

Ohio appellate rights and his federal habeas claims.  ECF Doc. 9 at 2-4.

## IV.    Law and Analysis

### A.    Procedural Deficiency

McSwain's petition is not verified.  Title 28 U.S.C. § 2242 provides in pertinent part:

"Application for a writ of habeas corpus shall be in writing signed and verified by the person for

whose relief it is intended or by someone acting in his behalf."  Likewise, Habeas Rule 2(c)(5)

expressly requires that the petition "be signed under penalty of perjury by the petitioner or by a

person authorized to sign it for the petitioner under 28 U.S.C. § 2242."  If a petition is

insufficient, the Clerk of Court must file the petition, and the court may require the petitioner to

submit a corrected petition that conforms to Rule 2(c), Habeas Rule 3(b); Habeas Rule 2,

Advisory Committee Comment, 2004 Amendments.  Title 28 U.S.C. § 1746 requires that a

declaration be subscribed as true under penalty of perjury, and be executed substantially in the

statutory form, which in turn requires a declaration "under penalty of perjury that the foregoing is true and correct." 28 U.S.C. § 1746.[5]

Here, although McSwain signed the petition, he failed to verify the truth of the petition. And the court may elect not to proceed to consider McSwain's petition and, instead, order him either to show cause why the petition should not be dismissed for lack of verification or to submit a statement of verification.  *See Johnson v. Sheldon*, No. 3:14cv1675, 2015 U.S. Dist. LEXIS (N.D. Oh. April 20, 2015); *Rosas v. Holland*, No. SA CV 15-745-BRO, 2015 U.S. Dist. LEXIS 67311 (C.D. Ca., May 21, 2015); *Kelly v. Copenhaven*, No. 1:13cv00117, 2013 U.S. Dist. LEXIS 12771, (E.D. Ca., January 29, 2013).  Supposing McSwain could submit a form of verification, I will analyze the petition below.

### B.      Facts

Should the Court elect to consider McSwain's petition on the merits despite the lack of verification, we begin the analysis with a recitation of the factual findings of the Ohio courts.

---

[5] Title 28 U.S.C. § 1746 provides:

> Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:
>
> (1) If executed without the United States:
>
> "I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on (date).
>
> (Signature)".
>
> (2) If executed within the United States, its territories, possessions, or commonwealths:
>
> "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date).
> (Signature)".

The Ohio Court of Appeals summarized the facts pertinent to McSwain's conviction and his

appellate assignments of error in its disposition of McSwain's direct appeal:

### Trial Testimony

{¶ 5}   T.M. testified that on the night of July 2, 2001, she met her friend Joanne Kowalski at a bar called Fleet's Finest. T.M. drove by herself that night and parked across the street from the bar at a gas station. T.M. did not lock her car doors because she only had the key to the ignition. T.M. denied using "illegal narcotics," "prescription narcotics," or drinking alcohol "heavily" that night. T.M. and Kowalski drank Bud Light over the course of "maybe an hour," although T.M. could not remember how many beers she had. However, she felt "okay to drive." T.M. and Kowalski left the bar together and each went their separate ways toward their respective cars. According to T.M., her intention was to go to a friend's house on Gertrude Ave. in Cleveland that night.

{¶ 6}   T.M. got into her car, heard a noise, and turned around to look in the backseat. A black male was there, and he put a knife to her throat. The male told T.M. not to look at him and "just * * * to drive." T.M. drove to the E. 88th St. and Union Ave. area, where the male told T.M. to get in the backseat with him. "I — it's so foggy, like all of that. But I do remember at some point in time like him having the knife to my throat and him just telling me like he just wants to be able to get off and he just wants some pussy, that's all he wants."

{¶ 7}   T.M. testified that the male penetrated her vagina with his fingers and his penis, performed oral sex on her, made her perform oral sex on him, and touched her breasts. Eventually, the male ejaculated in T.M.'s vagina. After he "got off," the male told T.M. that she was going to drop him off somewhere. Asked if the male still had the knife, T.M. testified, "It was there somewhere, I just don't know where at." T.M. dropped the male off at the corner of Broadway Ave. and Union Ave. T.M. testified that the sex was not consensual, and she did not feel free to leave her car.

{¶ 8}   T.M. went to a friend's house "and cried and cried and cried for hours." Eventually she took a shower, because she "felt nasty [and] dirty." T.M. went home, called her mother, and told her what happened. T.M.'s mother came to T.M.'s house. Although she could not recall an exact time frame, T.M. testified that her mother arrived at her house "probably about two or three hours" after the incident occurred. At this point, T.M. went to the hospital to report the rape. She told the hospital staff and the police what happened and was given a rape kit.

{¶ 9}   T.M. testified that she had never met this man before and he was a

"stranger" to her. T.M. described him as being taller than she was, and "[i]t seemed like maybe he had some acne on his face or like maybe he had acne prior to that." The police showed T.M. "books and books of pictures just to look at," but T.M. was unable to identify who raped her. "Not at that time. I didn't see anybody that looked even close to him."

{¶ 10}  In 2016, investigators went to T.M.'s house and told T.M. there was a lead in the case. One of the investigators showed T.M. a photo lineup, and T.M. identified the male who raped her in 2001. During her trial testimony, T.M. made an in-court identification of McSwain as the man who raped her.

{¶ 11}  Joanne Flynn [a.k.a. Kowalski] testified that, in July 2001, she met T.M. at Fleet's Finest for "a couple of beers." They were at the bar for "maybe an hour or so" before they got into their separate cars to leave. Several hours later, T.M. called Kowalski from the hospital and "[s]he said that when she got to her car that there was a guy in the backseat of her car and he pulled out a knife and told her where to drive and made her drive to a certain area, and then that he raped her, and that she had called the police and was at the hospital * * *."

{¶ 12}  Kowalski further testified that, sometime after this incident occurred, T.M. developed a drug problem. Specifically, T.M. "smoked crack and marijuana * * * [m]aybe a year, maybe not even a year" after she was raped.

{¶ 13}  T.M.'s mother testified that late one night in July 2001, T.M. called her "hysterical * * *, crying and carrying on," and told her that she was attacked. "And I asked her where she was, and she said she was at home. And I said, well, I'll be right there. And so I left my house and went to her house. And when I got to her she was just hysterical, crying. And I said, we have to call an ambulance. We have to get you to the hospital. So that's what we did."

{¶ 14}  T.M.'s mother testified that T.M. "said she was raped. She was tortured for hours. This man had her in the car. I learned more once we got to the hospital and I went through everything with her. I was in the room. I was in the examination room. They put us in a room together."

{¶ 15}  According to T.M.'s mother, after T.M. was released from the hospital, T.M. followed up at the Rape Crisis Center.

> So after this incident happened and she was just — she was just ruined. I mean, she was constantly crying and — upset, you know. * * * And it seemed like it took awhile. I don't know. I can't recall how long. But her getting all the help that she needed and then doctors and medicines they put her on, you know, different kind of medicines and stuff to treat her. * * * And I could hear

all the things that — she would lay up there, her bed, and I would hear her
screaming and crying. And I would just be downstairs and lay in my bed and
cry right along with her, knowing of the stuff she was going through and how
— what happened to her and stuff. So this kind of, I would say, pretty much
almost destroyed my daughter.

{¶ 16} T.M.'s mother testified that T.M. did not have an issue with drugs "until
after the situation that had happened to her. * * * I think she had the problems
with different medications, different pills. They had * * * her on so many
different medications, for anxiety, depression. You know, you name it, she took it,
I guess." T.M.'s mother was not aware that T.M. ever had a problem with crack
cocaine.

{¶ 17} Cleveland Police Detective Rick Connolly testified that in July 2001, he
was a patrol officer who responded to a rape allegation. He interviewed the
victim, T.M., at the hospital. He learned that the offender used a knife to facilitate
raping and kidnapping T.M. He did not learn the name of the suspect.

{¶ 18} Samuel Troyer testified that he is an Ohio Bureau of Criminal
Investigations forensic DNA analyst, and in 2014, he analyzed DNA from a rape
kit and prepared a report in the case at hand. According to Troyer, his tests
generated a lead for an "unknown male profile." Eventually, this DNA profile was
linked to McSwain. Troyer was given a "confirmatory swab" from McSwain, and
he compared this to swabs from T.M.'s rape kit. The results showed that T.M.'s
vaginal swab, skin swab, and pubic hair comb contained semen that was
consistent with McSwain's DNA profile. According to Troyer, the margin for
error regarding the DNA consistency is "rarer than one in one trillion."

{¶ 19} John Hupka testified that he is a retired patrolman for the Cleveland Police
Department. On May 31, 2016, he administered a photo array to T.M. He was not
associated in any other way with this case, and at the time he administered the
photo array, he did not know who the suspect was. Hupka testified that this is
"customary," so an officer "who does not know who the suspect is can administer
the lineup just to prevent the investigator possibly telling the victim who the
suspect is." T.M. circled the picture of a male at the top right corner of the lineup.

{¶ 20} Sonya Dziuba, who is an investigator for Cuyahoga County Prosecutor's
Sexual Assault CODIS Task Force, testified that she was assigned a case in which
T.M. alleged being raped. Dziuba believes that the Cleveland Police Department
sent the rape kit to the BCI in January 2014. The BCI analyzed the evidence and
generated an investigative lead indicating McSwain as a suspect.

{¶ 21} Dziuba interviewed McSwain, who, when showed a photograph of T.M.,
stated that he did not know her. Asked if he was in the 88th St. and Union Ave.
area on the night of July 2, 2001 or early morning of July 3, 2001, McSwain

stated no and insisted that he was incarcerated at the time. McSwain stated specifically that he did not get out of jail until September 8, 2001, "so there was no way that he was involved in this case." However, McSwain's Cuyahoga County court records indicate that he was incarcerated beginning August 2002, and he was released August 8, 2005.

{¶ 22}  Dziuba also testified that she interviewed T.M., who "stated that she could not recall everything about the situation[,] and she wasn't sure how she felt about going forward with the investigation."

{¶ 23}  McSwain testified that investigators came to his house, showed him a picture of a woman, and told him about allegations of rape in the summer of 2001. McSwain told the investigators that he was in prison at that time and that he did not recognize the person in the photo. Subsequently, McSwain gave the investigators an oral swab for DNA testing purposes.

{¶ 24}  During trial, McSwain testified that eventually he realized he was mistaken about the dates of his prior incarceration; McSwain was in prison in 2002, rather than 2001.

{¶ 25}  McSwain testified about his recollection of the night of July 2, 2001, and the morning of July 3, 2001. He was working at a temporary service on the corner of E. 52nd Street and Fleet Avenue. At the time, he was using crack cocaine. He was on his way to a friend's house at approximately 11:00 p.m. on July 2, 2001. McSwain testified as to what happened next:

> On the way there walking down Fleet Avenue I seen a white chick coming across the street, which is [T.M.], going to her car. I stopped, talked to her. I yelled at her as she was coming out of the bar.
> * * *
> I asked her about, did she want to get high. She told me — asked me for what. And I told her, do she smoke crack cocaine. And I guess she didn't believe me at first, so I pulled it out of my pocket because I had it on me and I showed her. And then she said, how do I know it's not fake. So I pulled it out and let her taste.
> * * *
> After I let her taste it she seen that it was real. So I asked her, where can we go. So she let me in the — get in the car with her. So like I said, I'm not familiar with the area where we went to. So we started going up Fleet. We were talking. I told her my name. She told me her name [although] I don't remember what name she told me. So we went up Fleet. We were talking. That's when we made the deal, what was going to happen.
> * * *
> I asked her what do I get from her when I give her what she wanted, which was crack cocaine. And I told her I wanted oral sex.
> * * *

14

So we drove to the area. It was up Union, I remember, because it is a Kentucky Fried Chicken on Broadway. So we went up Union to some side street, 79th, 88th, whatever. Like I would say, I didn't know the area. I'm not from down there.

So we parked on the side of the street. Her and I took a couple hits of crack cocaine. We took a couple of good hits, each other. And so then I told her, I gave you what you wanted, so what do I get now, and that's when she gave me oral sex in the front seat of the car.

{¶ 26}  Asked if he and T.M. also had vaginal sex, McSwain testified as follows: "Yes. This was after we had oral sex. We both jumped in the backseat of the car. But I couldn't perform so she gave me more oral sex for the second time, and that's when the — we had sex." McSwain testified that, after he ejaculated, T.M. asked him for more crack, "because I did promise her I would give her more after we had sex, but I did not give her any more [b]ecause we had been there for awhile and I didn't know the area and I didn't know if the police was coming or not."

{¶ 27}  According to McSwain, "[t]he reason why [T.M.] is claiming the rape and kidnapping, because I did not give her any more crack cocaine after we had sex. * * * Because she kept saying, is that how you going to play me. * * * I gave you what you wanted and you promised me some more crack cocaine after we had sex, which I did not give her any more."

*State v. McSwain*, Eighth Dist. Cuyahoga No. 105451, 2017-Ohio-8489, ¶¶ 5-27, 2017 Ohio App. LEXIS 4911 (November 9, 2017).  ECF Doc. 7-1 at 64.  These state court factual findings are presumed correct unless McSwain rebuts them by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Moore v. Mitchell,* 708 F.3d 760 (6th Cir. 2013).

## C.    AEDPA Standards for Merits Review

A state prisoner's claims for habeas corpus relief are governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 ("AEDPA"), which established a standard of review that gives significant deference to the decisions made by the state courts on the federal constitutional issues raised in a habeas corpus petition.  *See Penry v. Johnson*, 532 U.S. 782, 791, 121 S. Ct. 1910, 150 L. Ed. 2d 9 (2001); *Wilson v. Parker*, 515 F.3d 682, 691 (6th Cir. 2008).  AEDPA imposes a "highly deferential standard for evaluating state-court rulings," *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S. Ct. 2059, 138 L. Ed. 2d 481

15

(1997), and "demands that state-court decisions be given the benefit of the doubt," *Woodford v. Visciotti*, 537 U.S. 19, 24, 123 S. Ct. 357, 154 L. Ed. 2d 279, (2002) (per curiam).

When the claim presented in a habeas corpus petition **has** been presented to and decided on the merits by the state courts, a federal habeas court may not grant relief unless the state court's decision was contrary to or an unreasonable application of clearly established federal law or based on an unreasonable determination of the facts in light of the evidence that was presented. 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In applying this statute, the Supreme Court has held that" [t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable . . . an unreasonable application is different from an incorrect one." To obtain habeas corpus relief, a petitioner must show the state court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement." *Bobby v. Dixon*, 565 U.S. 23, 24, 132 S. Ct. 26, 181 L. Ed. 2d 328 (2011), quoting *Harrington v. Richter*, 562 U.S. 86, 103, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011). This standard is "difficult to meet" because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. at 102-103 (quoting *Jackson v. Virginia*, 443 U.S. 307,

332, n. 50, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (Stevens, J., concurring in judgment)).  In short,"[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.*, quoting *Yarborough v. Alvarado,* 541 U.S. 652, 664, 124 S. Ct. 2140, 158 L. Ed. 2d 938 (2004). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Schriro v. Landrigan,* 550 U.S. 465, 473, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007).

### D.    Ground One

McSwain's Ground One claim challenges his convictions based on his contention that there was insufficient evidence in the record for him to be found guilty of rape, gross sexual imposition and kidnapping.  Federal habeas review is available for insufficient-evidence claims. *Jackson,* 443 U.S. at 316; *In re Winship,* 397 U.S. 358 (1970); *Johnson v. Coyle,* 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders,* 894 F.2d 792, 794 (6th Cir. 1990)(*en banc*).  States have the power to determine the elements of criminal offenses, *See Engle v. Isaac,* 456 U.S. 107, 119-120 (1982); *Jackson,* 443 U.S. at 324, but the Due Process Clause prohibits states from convicting someone "without proving the elements of that crime beyond a reasonable doubt." *Fiore v. White,* 531 U.S. 225, 228-229 (2001).

A habeas court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319.  (Emphasis in original).  "[T]he *Jackson* inquiry does not focus on whether the trier of fact made the correct guilt or innocence

decision, but rather whether it made a rational decision to convict or acquit." *Herrera v. Collins,* 506 U.S. 390, 402 (1993).

Because both *Jackson* and AEDPA apply to McSwain's evidence sufficiency claim, federal habeas review requires deference at two levels.  "First, deference should be given to the trier of fact's verdict [here, the trial judge], as contemplated by *Jackson;* second, deference should be given to the [state appeals court's] consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir. 2011) (quoting *Tucker v. Palmer,* 541 F.3d 652, 656 (6th Cir. 2008)).  The Sixth Circuit has explained:

> When reviewing whether the state court's determination was "objectively unreasonable," this court necessarily engages in a two-step analysis.  First, we must ask whether the evidence itself was sufficient to convict under *Jackson*.  The inquiry ends if the panel determines that there was sufficient evidence to convict [the petitioner].  If we find that the evidence is insufficient to convict, we must then apply AEDPA deference and ask whether the state court was "objectively unreasonable" in concluding that a rational trier of fact could find [the petitioner] guilty beyond a reasonable doubt.

*Stewart v. Wolfenbarger*, 595 F.3d 647, 653 (6th Cir. 2010).  The Sixth Circuit has observed that "'[a] defendant who challenges the sufficiency of the evidence to sustain his conviction faces a nearly insurmountable hurdle.'"  *Davis*, 658 F.3d at 534 (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

McSwain argues that there was insufficient evidence to find him guilty of rape, kidnapping and gross sexual imposition as charged in the indictment.  ECF Doc. 1 at 5-7. McSwain raised this same claim in the trial court upon his Ohio Crim. R. 29 motion for judgment of acquittal, in the Ohio Court of Appeals on his first assignment of error on direct appeal, and in his first proposition of law in his memorandum in support of jurisdiction in the Ohio Supreme Court.  Thus, the Ohio courts *did* pass upon the merits of this claim, and the claim was properly exhausted in state court.

The last explained state court decision that considered McSwain's evidence insufficiency argument came from the Ohio Court of Appeals, which rejected it, holding:

## Sufficiency of the Evidence

{¶ 29} Crim. R. 29 mandates that the trial court issue a judgment of acquittal where the prosecution's evidence is insufficient to sustain a conviction for the offense. Crim. R. 29(A) and sufficiency of the evidence require the same analysis. *State v. Taylor*, 8th Dist. Cuyahoga No. 100315, 2014-Ohio-3134.

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Driggins*, 8th Dist. Cuyahoga No. 98073, 2012-Ohio-5287, ¶ 101, citing *State v. Thompkins*, 78 Ohio St.3d 380, 385, 678 N.E.2d 541, 1997-Ohio-52 (1997).

{¶ 30}  The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Vickers,* 8th Dist. Cuyahoga No. 97365, 2013-Ohio-1337, citing *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991).

{¶ 31}  R.C. 2907.02(A)(2) defines forcible rape as: "No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."

{¶ 32}  R.C. 2907.05(A)(1) defines GSI as: "No person shall have sexual contact with another * * * when * * * [t]he offender purposely compels the other person * * * to submit by force or threat of force."

{¶ 33}  R.C. 2905.01(A)(4) defines kidnapping as: "No person, by force, threat, or deception, * * * shall remove another from the place where the other person is found or restrain the liberty of the other person * * * [t]o engage in sexual activity * * * with the victim against the victim's will * * *."

{¶ 34}  In the case at hand, T.M. testified that McSwain forcibly raped her, and McSwain testified that he and T.M. smoked crack cocaine and had consensual sex. T.M.'s testimony alone, if believed, is sufficient to sustain convictions for rape, GSI, and kidnapping. *See State v. Blankenship, 8th Dist. Cuyahoga No. 77900, 2001 Ohio App. LEXIS 5520 (Dec. 13, 2001)* a victim's "testimony, if believed, is sufficient to prove each element of the offense of rape. There is no

requirement that a rape victim's testimony be corroborated as a condition precedent to conviction"). Accordingly, McSwain's first assigned error is overruled.

*State v. McSwain*, Eighth Dist. Cuyahoga No. 105451, 2017-Ohio-8489, ¶¶ 29-34, 2017 Ohio App. LEXIS 4911 (November 9, 2017).

There are several things we must do to decide McSwain's evidence sufficiency claim. First, as noted above, a habeas court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319. (Emphasis in original). Second, we must determine whether the Ohio courts evaluating this claim made a ruling that was in conflict with or an unreasonable application of clearly established federal law determined by the United States Supreme Court or, alternatively, made a ruling that was based on an unreasonable determination of the facts in light of the evidence that was presented. If not, we must defer to the rulings of the Ohio Courts. This is not a difficult question, despite McSwain's feeling that the evidence used to convict him was not believable.

First, although the Ohio Court of Appeals did not cite *Jackson v. Virginia*, it examined the record using the *Jackson* standard, determining "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Thus, the state law citations applied the correct federal law standard. *McSwain*, 2017-Ohio-8489 at ¶ 29.

Second, while we are required under AEDPA to defer to the state trial court and state court of appeals' findings when they correctly apply the proper federal law, here there is no need to do so reluctantly. It is plain that the Ohio Court of Appeals captured the issue in a proper way when it concluded that the testimony of the victim, T.M., that McSwain forcibly raped her – *if*

*believed* – was sufficient to sustain a conviction for rape. And the Ohio court acknowledged McSwain's version of events when it summarized McSwain's testimony: "McSwain testified that he and T.M. smoked crack cocaine and had consensual sex." *McSwain*, 2017-Ohio-8489 at ¶ 34. The evidence cited by the Ohio Court of Appeals regarding McSwain's touching of T.M.'s breasts and his forcing her at knife-point to drive to the assault site – *if believed* – was also sufficient to support convictions for gross sexual imposition and kidnapping.

McSwain's petition does not argue that T.M.'s testimony, if believed, would be insufficient to convict him of rape, gross sexual imposition and kidnapping. Instead, he offers arguments that T.M.'s testimony should not have been believed. For example, McSwain asks how it could be believed that he happened to hide out in a random car (which turned out to be T.M.'s) near the bar where T.M. had been socializing with her friend. And he decries the fact that T.M., supposedly fresh off a forcible rape, could not pick out McSwain's picture when shown over 500 photos soon after the incident, but could pick him out when shown a six-person photo array some fifteen years later. McSwain also finds reason to disbelieve T.M.'s identification of him, a smooth faced individual, when she originally told the police her assailant had acne scars which pock-marked his face. McSwain essentially argues that his version of events is much more believable. He contends it is eminently reasonable to conclude that he was standing near T.M.'s car when she left the bar, that he offered to smoke crack with her in exchange for sex, and that she agreed to this proposition. And he argues that it is reasonable to believe that T.M. came up with the rape story, after the fact, to cover up from her boyfriend her episode with McSwain.

McSwain is right when he argues that his version of events could have been believed. But his version could also have been rejected and T.M.'s version could have been believed

21

instead. And that is what happened. As found by the Ohio Court of Appeals, *if believed*, T.M.'s version of events was enough to convict McSwain. And McSwain's attempts to explain away how T.M. responded to the events of the incident – by calling her mother, enduring an invasive examination at the hospital, and by calling her close friend – were weak at best. And the mother and friend's testimony were both consistent with T.M.'s version. A rational trier of fact could have reasonably concluded that T.M.'s response was consistent with her version that she was abducted, raped and groped. It has never been the function of a habeas court to re-weigh the evidence. We cannot do so here. If we find that *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt from the evidence submitted, that ends the analysis. That is my finding. It is quite clear that a rational trier of fact could have found all of the elements of the charges of rape, gross sexual imposition and kidnapping were proven beyond a reasonable doubt.

The Ohio courts made no ruling that was contrary to or an unreasonable application of clearly established federal law and they issued no ruling that was based on an unreasonable determination of the facts in light of the evidence that was presented. I recommend, based on the record before this court, that McSwain's Ground One claim be rejected on the merits.

### E. Ground Two

McSwain's Ground Two claim alleges that he was denied a fair trial when the trial court allowed expert testimony from a witness who had not been "deemed" to be an expert. McSwain acknowledges that the Ohio Court of Appeals opinion stated that his trial counsel "stipulated" that prosecution witness Samuel Troyer was an expert witness and that the trial court accepted that stipulation. But McSwain also notes that his state court of appeals brief challenged whether Samuel Troyer "was deemed an expert by the trial court." ECF Doc. 1 at 7. A review of

McSwain's appellate brief confirms that his third assignment of error took issue with the prosecutor's failure to offer witness Troyer as an expert and with the trial judge's failure to declare Troyer an expert witness.  In framing the issue in state court, McSwain only cited Ohio Evid. R. 702 in his appellate brief; he never characterized the claim as a federal law issue. McSwain's habeas petition cites two federal cases in support of his general argument that he was denied a fair trial when the court received expert testimony from Troyer without first declaring him to be an expert witness.

Warden Buchanan opposed McSwain's Ground Two claim on several grounds.  First, the warden points out that issues of admissibility of evidence at a state court trial do not involve federal law, and only federal law violations provide a cognizable basis for federal habeas corpus relief.  Second, the warden argues that McSwain never characterized the issue relating to the admission of Troyer's testimony as a federal law violation in the Ohio courts, and, as a result, he failed to exhaust any such claim in those courts.  Relatedly, the warden contends that because McSwain can no longer present a federal claim related to the admission of Troyer's testimony in the Ohio courts, such a claim must be dismissed as procedurally defaulted.  Third, the warden argues that to the extent McSwain now complains that he was denied effective assistance of trial counsel because his trial counsel stipulated that Troyer was an expert, that claim was itself procedurally defaulted because it was not raised on direct appeal.  And the warden argues that the denial of McSwain's attempt to argue ineffective assistance of appellate counsel for not raising that claim on appeal was also procedurally defaulted because McSwain was not granted leave to present that issue upon a reopening of his direct appeal and McSwain failed in his effort to obtain Ohio Supreme Court review of that ruling.  Finally, the warden argues that if McSwain's Ground Two claim was decided on the merits it would fail for lack of merit.

### 1.    Cognizability

First, Warden Buchanan's argument that McSwain's ground two claim does not present a cognizable matter for federal habeas corpus relief is correct.  In order to obtain a writ of habeas corpus, a petitioner must present a *cognizable issue*, meaning he must allege a violation of the Constitution, laws, or treaties of the United States.  *Estelle v. McGuire*, 502 U.S. 62, 68 (1991); 28 U.S.C. § 2241.  Otherwise, the federal habeas court cannot review the claim.  *See Estelle*, 502 U.S. at 68.  Violations of state constitutions, laws, or rules are *noncognizable*.  *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (quoting *Estelle*, 502 U.S. at 67).  A petitioner cannot turn a state-law claim into a constitutional claim making generic allegations that the failure to follow the state rule violated his right to a "fair trial" or his "due process" rights.  *See Rivera v. Illinois*, 556 U.S. 148, 158 (2009) (holding that the Due Process Clause does not require strict observance of state procedural rules).  Moreover, "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction," binds federal habeas courts. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (citing *Estelle*, 502 U.S. at 67-68).

Specifically, habeas review does not ordinarily extend to state court rulings on the admissibility of evidence.  *See Burgett v. Texas*, 389 U.S. 109, 113-14, 19 L. Ed. 2d 319, 88 S. Ct. 258 (1967); *Buell v. Mitchell*, 274 F.3d 337, 357 (6th Cir. 2001); *Fuson v. Jago*, 773 F.2d 55, 59 (6th Cir. 1985); *Bell v. Arn*, 536 F.2d 123, 125 (6th Cir. 1976).  "Errors of state law, especially errors based on a trial court's evidentiary rulings, do not, in and of themselves, violate the constitution."  *Buell*, 274 F.3d at 357, citing *Neumann v. Jordan*, 84 F.3d 985, 988 (7th Cir. 1996); *see also Lundy v. Campbell*, 888 F.2d 467, 473 (6th Cir. 1989).  Nevertheless, a state-court ruling on a state-law issue may violate a petitioner's due process rights when it made the underlying proceeding "fundamentally unfair."  *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir.

2000); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). That is, when the state-court ruling undermined the "'fundamental conceptions of justice which lie at the base of our civil and political institutions,' . . . and which define 'the community's sense of fair play and decency.'" *Dowling*, 493 U.S. 342, 352 (1990) (internal citations omitted) the habeas court may grant relief. Courts have defined such violations "very narrowly." *Id.*

When McSwain presented his claim about the admission of Samuel Troyer's testimony in state court, he only argued that it was a violation of Ohio Evid. R. 702. He did not argue any federal law violation. And the Ohio Court of Appeals never stated that it considered any federal law issue when disposing of that claim. This renders the claim a noncognizable state law issue which we may not consider. In addition, as noted above, we do not have the power to reexamine the way the Ohio courts decided this issue. *Bradshaw*, 546 U.S. at 76 (2005).

Nothing about the Ohio courts' treatment of McSwain's claim concerning the admission of Samuel Troyer's testimony rendered McSwain's trial fundamentally unfair. In reality, McSwain's Ground Two claim rests upon several fundamentally flawed ideas. First, McSwain's lawyer agreed that Troyer was an expert. And the trial judge acknowledged the agreement by stating "Okay." At that, the prosecutor accepted the stipulation. ECF Doc. 7-2 at 95. This was not surprising given Troyer's employment at the Ohio Bureau of Criminal Investigation as a forensic DNA analyst. ECF Doc. 7-2 at 96.

Second, McSwain's Ground Two claim is premised on the mistaken belief that the trial judge is obligated to state on the record that a witness is being accepted as an expert witness.[6] McSwain's petition cited *United States v. Johnson*, 488 F.3d 690 (6th Cir. 2007) and *United States v. Keslor*, No. 2:08cr81-5, 2009 U.S. Dist. LEXIS 59268 (S.D. Ohio, June 25, 2009), both

---

[6] It isn't surprising McSwain would think this. His appellate attorney on direct appeal advanced that mistaken argument at the third assignment of error in McSwain's appellate brief. ECF Doc. 7-1 at 40-41.

of which held the exact opposite.  In *Johnson*, the Sixth Circuit did not rule on a claim that error occurred when a trial judge failed to "declare" a police officer to be an expert witness.  Instead, the court decided whether it was plain error for the trial judge to declare before a jury that the witness "*was* to be considered an expert."  *Johnson*, 488 F.3d at 697 (emphasis added).  And the court endorsed the idea that, "the court does not 'certify' or declare witnesses to be "experts" when 'tendered' as such at trial."  *Id.* at 698.  Instead, the correct procedure is for counsel to "pose qualifying and foundational questions and proceed to elicit opinion testimony."  *Id.*  Only if there is an objection to the qualifications of the witness should the court make a determination on whether the witness may offer expert opinion testimony.  *Id.*  Thus, because McSwain's entire Ground Two claim is premised on the incorrect idea that the trial judge must "deem" or "declare" a witness to be an expert before expert opinion testimony may be elicited, it is quite obvious that his trial was not fundamentally unfair in the absence of such a declaration.

Third, McSwain's Ground Two claim is also premised on the mistaken idea that the testimony of BCI witness Troyer was critical evidence without which the state could not have proven its case.  That is simply not correct.  DNA-related evidence is useful to prove only one thing: that a person was present at a particular place.  It cannot prove the *precise time when* a person was present; it cannot prove *how long* a person was present; and it cannot prove the *state of mind* of the person when he was present.  It can only prove presence.  Here, Troyer's testimony that McSwain's DNA was present in a swab taken from T.M.'s vagina proved McSwain had been present there.  But it wasn't only the DNA evidence that proved McSwain's presence.  T.M.'s testimony proved McSwain's presence.  And, critically, McSwain *proved his own presence* when he testified that he and T.M. had consensual sexual intercourse.  ECF Doc. 7-3 at 13.  McSwain also proved his presence when he testified that T.M. performed oral sex on

him. ECF Doc. 7-3 at 13. McSwain proved his presence when he admitted he digitally penetrated T.M. ECF Doc. 7-3 at 38. And McSwain proved his presence when he admitted he touched T.M.'s breasts. ECF Doc. 7-3 at 37. Thus, while the DNA analysis corroborated T.M.'s testimony, it also corroborated McSwain's own testimony. We have no basis on which to conclude that the admission of Troyer's testimony somehow turned McSwain's trial into a fundamentally unfair proceeding.

This court should not consider McSwain's Ground Two claim. He has raised only a noncognizable state law issue; and there was nothing about defense counsel's stipulation to Samuel Troyers's expertise, or about the absence of any declaration by the trial judge that Troyer was permitted to offer expert opinion testimony, or about the admission of opinions concerning the DNA evidence that rendered McSwain's trial fundamentally unfair. I recommend the Ground Two claim be dismissed as noncognizable.

### 2. Procedural Default/Exhaustion

If McSwain believes he has some federal issue arising from the admission of Samuel Troyer's testimony, he procedurally defaulted the claim by not fairly presenting it as a federal claim in the Ohio courts and giving them a full round of appeals to correct any alleged federal constitutional error. "Before [a federal court may] reach the merits of a habeas petition, . . . [it must] review whether the petitioner has satisfied the [two] procedural requirements for litigating his federal claim in state court." *Gerth v. Warden, Allen Oakwood Corr. Inst.*, 938 F.3d 821, 826 (6th Cir. 2019) (citing *Bickham v. Winn*, 888 F.3d 248, 250-51 (6th Cir. 2018), and *Seymour v. Walker*, 224 F.3d 542, 550 (6th Cir. 2000)). "First, the petitioner must [have] exhaust[ed] all available opportunities to pursue his claim in state court before he may litigate that claim in federal court." *Id.* (noting that this requirement, rooted in the principles of comity and

federalism, seeks to "avoid the unseemly result of a federal court upsetting a state court conviction without first according the state courts an opportunity to correct a constitutional violation" (internal quotations and alterations omitted)); 28 U.S.C. § 2254(b)(1)(A).  The petitioner must have given the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).

"Second, and relatedly, the procedural default doctrine bars [federal habeas] review if the petitioner has not followed the state's procedural requirements for presenting his claim in state court." *Gerth*, 938 F.3d at 827.  A federal court usually may not review a state prisoner's habeas claim if (1) the prisoner broke a state procedural rule, (2) the state court enforced the rule, and (3) the procedural forfeiture was an adequate and independent ground for denying relief. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  McSwain violated the first procedural requirement indicated in *Gerth*.  If he had a federal claim implicit in his Ground Two claim for relief, he neither fairly presented nor exhausted it in the Ohio courts.  Any such claim has been procedurally defaulted because McSwain has no remaining opportunities to bring such claims in the Ohio courts.  *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006) ("[When] state court remedies are no longer available to a petitioner because he or she failed to use them within the required time period, procedural default and not exhaustion bars federal court review."); *see also Gray v. Netherland*, 518 U.S. 152, 161-62 (1996) ("Because the exhaustion requirement 'refers only to remedies still available at the time of the federal petition,' . . ., it is satisfied 'if it is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law' . . . ."

(internal citations omitted)). I find any federal claim implicit in McSwain's Ground Two claim to have been procedurally defaulted.[7]

### a. Cause for Procedural Default

A finding that a claim has been procedurally defaulted does not end the court's analysis of the issue. In *Maupin,* 785 F.2d 135, the Sixth Circuit recognized that, even if the claims are procedurally defaulted, the court may consider the merits of the claim if "the petitioner can show cause for not following the procedural rule and that failure to review the claim would result in prejudice or a miscarriage of justice." *Williams v. Coyle*, 260 F.3d 684, 693 (6th Cir. 2001) (citing *Maupin*, 785 F.2d at 138) (further citations omitted).

McSwain makes no argument about why he did not characterize his Ground Two claim as a federal claim in state court. I conclude that he has waived his right to argue that something caused his procedural default. He may not, therefore avail himself of the first exception to procedural default. He *does*, however, make an argument in his traverse entitled "New Reliable Evidence" which are the key words one finds in actual innocence arguments. ECF Doc. 9 at 2. McSwain's argument, however, is patently not an actual innocence argument, as further explained in subsection (b) below.

It bears mention that McSwain's petition asserts that he was unable to file a timely Ohio Supreme Court appeal of the court of appeals' denial of his Ohio Evid. R. 26(B) application to reopen his direct appeal. In essence, McSwain argues that he was unable to obtain his trial transcript, which, in turn, prevented him from being able to file a timely Rule 26(B) application

---

[7] McSwain's petition and traverse complain about the effectiveness of his trial counsel. But he never alleged a claim of ineffective assistance of counsel in his direct appeal, thereby failing to fairly present such a claim; and he did not succeed in his attempts to allege ineffective assistance of trial and appellate counsel in his Ohio App. R. 26(B) application to reopen his direct appeal, so that claim too was not fairly presented or exhausted. Any ineffective assistance of counsel claim has been procedurally defaulted.

or a timely Supreme Court appeal. Implicit within McSwain's argument is the contention that the inability to obtain a trial transcript caused him to file his application to reopen too late and to be unable to comply with the Ohio Supreme Court's filing requirements. Even if we assume McSwain is right – that the inability to obtain his trial transcript was what caused him to miss these filing opportunities – that would not be sufficient evidence of cause to excuse a procedural default. It is well settled that to establish cause, a habeas corpus petitioner must show that "some objective factor external to the defense" prevented the petitioner's compliance with a state procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). McSwain has not shown that something external to his side of the case prevented him from obtaining his trial transcript. Indeed, the state court of appeals expressly advised him that he could obtain the transcript upon his filing of the Rule 26(B) application. ECF Doc. 7-1 at 125. Moreover, nothing in Rule 26(B) requires that an applicant must make citations to a transcript in order to apply to reopen the direct appeal. Thus, McSwain has not shown and cannot show that some factor outside of his control prevented him from filing a timely Rule 26(B) application or from instituting a timely Ohio Supreme Court appeal of the denial of his application.

Absent a showing of cause, we need not evaluate whether McSwain could show actual prejudice from the failure to consider any federal claim implicit in his Ground Two claim.

### b.    Actual Innocence

Another exception to procedural default applies when a prisoner argues that he is actually innocent. A federal court may review a procedurally defaulted claim, even in the absence of a demonstration of cause and prejudice, to correct "a fundamental miscarriage of justice," as when the petitioner is actually innocent. *Coleman v. Thompson,* 501 U.S. 722, 748, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991) (quoting *Engle v. Isaac*, 456 U.S. 107, 135, 102 S. Ct. 1558, 71 L. Ed.

2d 783 (1982)).  It is well-established that "'[a]ctual innocence' means factual innocence, not mere legal insufficiency." *Carter v. Mitchell*, 443 F.3d 517, 538 (6th Cir. 2006) (citing *Bousley v. United States*, 523 U.S. 614, 623, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998)).  For a petitioner to establish "actual innocence," that petitioner must present new evidence to the habeas court. *Gulertekin v. Tinnelman-Cooper*, 340 F.3d 415, 427 (6th Cir. Ohio 2003).  This "new evidence [will] not rise to the standard of establishing his actual innocence [if] a reasonable juror still could have found [petitioner] guilty [beyond a reasonable doubt] even after considering [the] new evidence." *Jells v. Mitchell*, 538 F.3d 478, 507 (6th Cir. 2008).  New evidence cannot excuse procedural default except when that evidence is "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *Sellers v. Ward*, 135 F.3d 1333, 1338 (10th Cir. 1998) (citing *Schlup v. Delo*, 513 U.S. 298, 324, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995)).  New evidence, consequently, can only excuse procedural default in "extraordinary" cases. *Carter*, 443 F.3d at 538.

Here, McSwain argues that upon his receipt of the trial transcripts – filed at the time the answer/return of writ was filed by Warden Buchanan – he now has seen defects in the trial testimony of Samuel Troyer concerning the DNA test kit evidence.  He argues that there were problems with the handling of the test kit before Troyer did his review.  And he contends there were chain of custody problems for the DNA test kit.

Manifestly, McSwain's arguments about the DNA test kit are not "new reliable evidence."  The DNA test kit was the subject of trial testimony.  Information available at the time of trial – and discussed at the trial – is, by definition, not new evidence.  "To demonstrate actual innocence to excuse his procedural default, a petitioner must come forward with 'new

reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—*that was not presented at trial*.'"  *Schlup v. Delo*, 513 U.S. 298, 324 115 S.Ct. 851, 130 L.Ed.2d (1995) (emphasis added); *Allen v. Henry*, 497 F. App'x 473, 480 (6th Cir. 2012).  By pointing to alleged insufficiencies in the DNA-related evidence offered at trial, McSwain does not offer evidence that would exonerate him.

Even if we were to characterize McSwain's arguments about the DNA kit as "new evidence" they still would not be sufficient to satisfy the actual innocence requirements of *Schlup*.  For the reasons discussed above, there can be little doubt that a reasonable juror still could have found McSwain guilty of rape, gross sexual imposition and kidnapping based solely upon the testimony of T.M.  In sex offense cases, the victim's testimony alone is sufficient to sustain the petitioner's conviction.  *See O'Hara v. Brigano*, 499 F.3d 492, 500 (6th Cir. 2007). And despite any concerns about the quality of the DNA evidence, McSwain's own testimony admitted he'd had sexual contact with T.M. on the evening in question.  "New evidence" does not establish actual innocence if a reasonable juror still could have found [petitioner] guilty [beyond a reasonable doubt] even after considering [the] new evidence."  *Jells v. Mitchell,* 538 F.3d 478, 507 (6th Cir. 2008).  So, even if the jury had concluded the DNA-related evidence was too flawed to give weight to, it still had more than enough evidence on which to find McSwain guilty.

Because McSwain cannot overcome the procedural default of any federal constitutional claim implicit in his Ground Two claim, I recommend the claim be dismissed as both noncognizable and procedurally defaulted.

### 3.      Merits

Even if McSwain's Ground Two claim did not suffer from the fatal defects of lack of cognizability and procedurally default, it is beyond doubt that Ground Two would fail on the merits if we were to conduct a merits analysis.  First, as noted above, AEDPA only authorizes habeas corpus relief when a state court decision was contrary to or an unreasonable application of clearly established federal law – as determined by a holding of the United States Supreme Court – or was based on an unreasonable determination of the facts in light of the evidence that was presented.  28 U.S.C. § 2254(d).  Here, McSwain has not cited any Supreme Court law indicating that a trial court must declare a witness to be an expert before she or he may give opinion testimony.  Absent such controlling Supreme Court precedent, a claim like McSwain's Ground Two claim must fail on the merits.  A state court does not act contrary to clearly established law when the precedent of the Supreme Court is ambiguous or nonexistent.  *See, e.g., Mitchell v. Esparza*, 540 U.S. 12, 17 (2003) (per curiam).  And, as discussed more fully above, the Sixth Circuit has directly contradicted the idea that the trial court must deem someone an expert as a predicate to the giving of expert opinion testimony.  *United States v. Johnson*, 488 F.3d 690, 698 (6th Cir. 2007).  Thus, even if not otherwise flawed, McSwain's Ground Two claim would fail on the merits.  The claim should be dismissed.

### F.          Ground Three

McSwain's Ground Three claim asserts that his due process rights were violated when he was denied a copy of his trial transcript prior to his attempt to reopen his direct appeal under Ohio App. R. 26(B).  And he contends his Rule 26(B) application was denied because he could not get the transcript early enough to make a timely filing.  McSwain sought to reopen his direct appeal to claim that his appellate counsel was ineffective for not raising two assignments of

error: (1) that McSwain suffered prejudice from the state's nearly fifteen-year delay in indicting him; and (2) that his trial and appellate counsel were ineffective for not asserting that the state had destroyed crucial evidence – the alleged handwritten statement of T.M. – given on the day after the alleged crimes.  As a result, McSwain is not seeking a direct reversal of his conviction, but only the claim that he was wrongly denied a copy of his trial transcript, which *might* have led to the opportunity to assert ineffective assistance of appellate counsel claims *if* his Rule 26(B) application had been granted.

### a.    Cognizability

Because McSwain's Ground Three claim only attacks the manner in which the Ohio courts conducted post-conviction proceedings, it does not raise a cognizable claim.  It is well settled that habeas proceedings are not available to seek redress for claimed deficiencies in a state's performance of its procedures for post-conviction relief.  In *Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007), the Sixth Circuit noted: "[We have] consistently held that errors in post-conviction proceedings are outside the scope of federal habeas corpus review.  *See Kirby v. Dutton*, 794 F.2d 245, 246-47 (6th Cir. 1986); *Roe v. Baker*, 316 F.3d 557, 571 (6th Cir. 2002). We have clearly held that claims challenging state collateral post-conviction proceedings "cannot be brought under the federal habeas corpus provision, 28 U.S.C. § 2254," because "the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Kirby*, 794 F.2d at 246 (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 484, 93 S. Ct. 1827, 36 L. Ed. 2d 439 (1973))." (internal quotation marks altered).

Even if McSwain were to contend that the goal of his Rule 26(B) application was to assert an error that would, if remedied, lead to the reversal of his conviction, that too would not render the Ground Three claim cognizable.  As *Cress* held:

> A due process claim related to collateral post-conviction proceedings, even if resolved in a petitioner's favor, would not "result [in] . . . release or a reduction in . . . time to be served or in any other way affect his detention because we would not be reviewing any matter directly pertaining to his detention." *Kirby*, 794 F.2d at 247. "Though the ultimate goal in" a case alleging post-conviction error "is release from confinement, the result of habeas review of the specific issue[] . . . is not in any way related to the confinement." *Id.* at 248. Accordingly, we have held repeatedly that "the scope of the writ [does not] reach this second tier of complaints about deficiencies in state post-conviction proceedings," noting that "the writ is not the proper means" to challenge "collateral matters" as opposed to "the underlying state conviction giving rise to the prisoner's incarceration." *Id.* at 248, 247; see also *Alley v. Bell*, 307 F.3d 380, 387 (6th Cir. 2002) ("error committed during state post-conviction proceedings can not [sic ] provide a basis for federal habeas relief" (citing *Kirby*, 794 F.2d at 247)); *Greer v. Mitchell*, 264 F.3d 663, 681 (6th Cir. 2001) ("habeas corpus cannot be used to mount challenges to a state's scheme of post-conviction relief").

*Cress*, 484 F.3d at 853.  Thus, to the extent McSwain's Ground Three claim relates to the handling of his request for a trial transcript in order to be able to apply to reopen his direct appeal, the claim is noncognizable.  And, by definition, nothing that happens in a post-conviction proceeding can render the original trial unfair.  I recommend McSwain's Ground Three claim be dismissed as noncognizable.

### b. Procedural Default

If we overlook the cognizability issue and focus instead on McSwain's contention that he had viable ineffective assistance of appellate counsel ("IAAC") claims, we would be required to evaluate the state court's treatment of McSwain's Rule 26(B) application.  The Ohio Court of Appeals never ruled on the merits of McSwain's IAAC claims.  Instead, it denied the application because it was filed more than ninety days after entry of the direct appeal judgment, and McSwain did not show good cause to excuse the late filing.  In other words, the Ohio Court of

35

Appeals enforced a state procedural rule to deny McSwain's application. When a state court declines to address a prisoner's federal claims because the prisoner has failed to meet a state procedural requirement, federal habeas review is barred as long as the state judgment rested on an "adequate and independent" state procedural ground. *Coleman v. Thompson*, 501 U.S. at 729. The Sixth Circuit has held that enforcement of the Ohio App. R. 26(B) time deadline is an adequate and independent basis for denial of the application to reopen. *Parker v. Bagley*, 543 F.3d 859, 862 (6th Cir. 2008). Moreover, McSwain's failure to complete one full round of appeals on the issues raised his Ground Three claim by not timely commencing an appeal to the Ohio Supreme Court cements the conclusion that the claim is procedurally defaulted. *O'Sullivan v. Boerckel*, 526 U.S. at 845.

As discussed in connection with McSwain's Ground Two claim above, a petitioner may overcome a procedural default by demonstrating cause for the default and actual prejudice that resulted from the alleged violation of federal law, or that there will be a "fundamental miscarriage of justice" if the claim is not considered. *Coleman*, 501 U.S. at 750. McSwain's claim that he was unable to obtain a trial transcript early enough to file a timely petition is not something over which he had no control; it was not, therefore "external to the defense" sufficient to establish cause to excuse his procedural default. *Murray* 477 U.S. at 488. In *Steele v. Jenkins*, No. 17-4171, 2018 U.S. App. LEXIS 28006, 2018 WL 2144073 (6th Cir. March 5, 2018), the court ruled that a habeas petitioner's failure to comply with proper procedures for obtaining transcripts does not establish cause to excuse a procedural default. The same is true here. McSwain was directly advised that he was able to request a transcript of his trial upon the filing of his Rule 26(B) application. ECF Doc. 7-1 at 125. He never sought the transcript.

Even more fundamental, Ohio App. R. 26(B) does not mandate citations be made to the record in order to file the application to reopen.  Rather, it indicates that the application shall include "[a]ny parts of the record available to the applicant . . . ."  It is obvious that one who did not have a transcript could not be faulted under that standard for not citing to the court record.  The rule also requires a person filing an application to reopen beyond the ninety-day deadline to provide "a showing of good cause for untimely filing."  The Ohio Court of Appeals ruled that "McSwain has failed to argue any showing of good cause for the untimely filing of his application for reopening."  *State v. McSwain*, Eighth Dist. Cuyahoga No. 105451, 2018-Ohio-1827, ¶ 3 (May 7, 2018), ECF Doc. 7-1 at 145.

McSwain never argued to the Ohio Court of Appeals that he could not file his application to reopen because he did not have his transcript.  A review of the application to reopen shows why.  His first argument was that he was unfairly prosecuted after excessive preindictment delay.  His second argument focused upon: (i) an allegedly missing written statement of the victim, (ii) trial counsel's ineffectiveness, and (iii) appellate counsel's ineffectiveness.  McSwain made each of these points without benefit of a transcript, thereby demonstrating that he didn't need a transcript to file a timely Rule 26(B) application.  I find that McSwain has not demonstrated cause to excuse his procedural default of his Ground Three claim.  Absent a showing of cause, there is no requirement that we analyze whether McSwain would suffer prejudice if his Ground Three claim is not reached on the merits.

As discussed in connection with McSwain's Ground Two claim, McSwain has produced no new, reliable evidence that he was factually innocent of committing the crimes against T.M. of which he was convicted.  He cannot, therefore excuse his procedural default of his Ground Three claim based on an argument that there would be a fundamental miscarriage of justice if the

claim were not decided on the merits. "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'" *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray*, 477 U.S. at 496 (1986)).  McSwain has not made this showing.

I recommend that that the Court find McSwain's Ground Three claim to have been procedurally defaulted.  It should be dismissed on that basis in addition to its lack of cognizability.

### c.  Merits

Even if the Court opted to ignore the lack of cognizability and the procedural default of McSwain's Ground Three claim and chose to decide the claim on the merits, McSwain has not identified any ruling by one of the Ohio courts in regard to the handling of his Rule 26(B) application[8] that was contrary to or an incorrect application of clearly established federal announced in a decision of the United States Supreme Court.  And he has not identified any decision of the Ohio courts that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  Without these showings, McSwain's Ground Three claim would fail on the merits.

I recommend McSwain's Ground Three claim be dismissed as noncognizable and procedurally defaulted.  The claim also has no merit and would be dismissed on that basis if the Court chose to reach the merits.

---

[8] We cannot recharacterize McSwain's Ground Three claim as an IAAC claim for the alleged failure to assert assignments of error for preindictment delay and loss of T.M.'s alleged handwritten statement. Those issue have never been addressed on the merits by any Ohio court, and it is not the province of a habeas court to make determinations on issues never decided in the state courts absent a manifest injustice.  As discussed in the body of this R&R, McSwain has not produced any new, reliable evidence to establish that he was actually innocent.  As a result, I have not included a discussion of the merits of McSwain's putative IAAC claim.

### V.     Recommendation Regarding Certificate of Appealability

#### A.     Legal Standard

As amended by the AEDPA, 28 U.S.C. § 2253(c)(1) provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability.  The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue.  Rather, the courts that have considered the issue have concluded that "[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further." *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996)(quoting *Barefoot v. Estelle*, 463 U.S. 880, 893, n. 4 (1983)(internal quotation marks altered); *accord Slack v. McDaniel*, 529 U.S. 473, 483-484 (2000).  The statute requires that certificates of appealability specify which issues are appealable. 28 U.S.C. § 2253(c)(3).

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rule 11(a), 28 U.S.C. foll. § 2254.  The rule tracks the requirement of § 2253(c)(3) that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by §

2253(c)(2)," Rule 11(a).  In light of the Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I make a further recommendation regarding the certificate of appealability issue.

### B.  Analysis

All of McSwain's habeas claims lack merit and/or are noncognizable, as explained above. And all but one of McSwain's claims are procedurally defaulted because he did not fairly present them in the Ohio courts for one full round of the appeals process, and he has not shown cause to excuse the default.  McSwain has not shown any unreasonable applications of clearly established federal law or any unreasonable determinations of facts.  Habeas relief is not available for the issues identified in his petition.  These conclusions would not be debatable among jurists of reason, and I recommend that no certificate of appealability issue in this case.

## VI.    Recommendation

Because all of McSwain's claims raise only noncognizable issues, were procedurally defaulted and/or lack merit, I recommend that the claims be dismissed with prejudice and that McSwain's petition for writ of habeas corpus be DENIED.

Dated: March 31, 2020

Thomas M. Parker
United States Magistrate Judge

---

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See

*U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981). See also *Thomas v. Arn,* 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).